KAUR, Appellant,

v.

BHARMOTA et al., Appellees.

[Cite as *Kaur v. Bharmota,* 182 Ohio App.3d 696, 2009-Ohio-2344.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–646.

Decided May 19, 2009.

Leonard F. Lybarger, for appellant and appellees Bahadur S. Bharmota and Dilbagh S. Bharmota.

Fusco, Mackey, Mathews & Gill, L.L.P., and Jeffrey D. Mackey, for appellees Satya Bharmota, Ajanta Dayal, Monika Bharmota, Lovinder Bharmota, and Alora Bharmota.

---

Brown, Judge.

{¶ 1} Parkash Kaur, plaintiff-appellant, appeals from a judgment of the Franklin County Probate Court, in which the court adopted the magistrate's decision and ruled that defendant-appellee, Satya Bharmota (referred to as "appellee," among other appellees), was the lawful surviving spouse of Harjit S. Bharmota ("decedent").

{¶ 2} Appellant and decedent were married February 2, 1946. At that time, they were members of the Sikh religion and members of the Ad–Dharmi tribe or caste living in the Hoshiarpur District of the Punjab state of India. Appellant and decedent allegedly terminated their marriage in 1961 while living in the same locale. On July 9, 1967, appellee and decedent married in India. Subsequently, appellee and decedent moved to the United States, living as husband and wife until decedent's death in 2000. Appellant moved to Cleveland, Ohio, in 1996.

{¶ 3} On December 30, 2005, appellant filed a complaint in the Franklin County Probate Court against appellee and against appellees Ajanta Dayal, executor of decedent's estate; Monika Bharmota, the daughter of decedent and appellee; Lovinder Bharmota, the son of decedent and appellee; Alora Bharmota, the daughter of decedent and appellee; Bahadur S. Bharmota, the son of decedent and appellant; and Dilbagh S. Bharmota, the son of decedent and appellant. In the complaint, appellant sought to be declared the surviving spouse of decedent, claiming that she and decedent had never divorced. A hearing took place before a probate court magistrate. On October 31, 2005, the magistrate found appellee to be the lawful surviving spouse of decedent. Appellant filed a motion for extension of time to file objections. On November 21, 2005, the trial court denied appellant's motion for extension of time to file objections and adopted the magistrate's decision. Appellant appealed to this court, and on September 26, 2006, in *Kaur v. Bharmota*, 10th Dist. No. 05AP–1333, 2006-Ohio-5782, 2006 WL 3113376, this court found that the trial court had erred by failing to exercise its discretion to determine whether to permit appellant to file her objections. We reversed the trial court's decision and remanded the matter for further proceedings.

{¶ 4} Upon remand, the trial court sustained appellant's objections and referred the matter to the magistrate. The magistrate issued a decision on February 19, 2008. The magistrate found that appellant and decedent were lawfully divorced in 1961 and that decedent and appellee were then lawfully married, making appellee decedent's surviving spouse. Appellant filed objections to the magistrate's decision. On July 3, 2008, the trial court overruled appellant's objections and adopted the magistrate's decision, finding that appellee was the surviving spouse of decedent. Appellant appeals the judgment of the trial court, asserting the following assignments of error:

[I.] The trial court erred in approving on July 2, 2008 the decision of the Magistrate dated February 19, 2008 finding that defendant-appellee, Satya Bharmota, rather than plaintiff-appellant, Parkash Kaur (now known as Parkash K. Bharmota) is the surviving spouse of the decedent, Harjit S. Bharmota.

[II.] As a part of assignment of error number one, the trial court erred in finding that the decedent's marriage to the appellant was lawfully terminated prior to his remarriage to appellee, Satya Bharmota, as a result of a customary divorce that occurred in the Punjab state of India in 1961.

[III.] The trial court erred, as a part of assignment of error number two, in finding that defendant's Exhibits 1 (1–1, 1–2, 1–3) and 2 demonstrated that the parties executed a customary divorce and that these exhibits were properly admitted into the record. A concomitant issue is whether the court erred in admitting defendant's exhibits 10 and 11, albeit for the purpose of showing the non-existence of a court-approved divorce.

[IV.] The trial court erred in finding that even in the absence of defendants' Exhibits 1 and 2, appellee presented sufficient evidence to overcome the presumption in law that the marriage of Harjit S. Bharmota and Parkash Kaur continued so as to make Harjit unqualified to marry appellee in 1967.

{¶ 5} We will address appellant's assignments of error together, as they are related. Appellant argues in her first assignment of error that the trial court erred when it found that appellee was the surviving spouse of decedent. Appellant argues in her second assignment of error that the trial court erred when it found that decedent's marriage to appellant had been lawfully terminated prior to his remarriage to appellee as a result of a customary divorce that occurred in the Punjab state of India in 1961. Appellant argues in her third assignment of error that the trial court erred when it found that appellees' Exhibits 1 (1–1, 1–2, 1–3) and 2 demonstrated that the parties had executed a customary divorce, when it found that these exhibits were properly admitted into the record, and when it admitted appellees' Exhibits 10 and 11. Appellant argues in her fourth assignment of error that the trial court erred when it found that even in the absence of appellees' Exhibits 1 and 2, appellee had presented sufficient evidence to over-

come the presumption that the marriage of decedent and appellant continued so as to make decedent unqualified to marry appellee in 1967.

{¶ 6} The parties here agree that the pertinent issue, as addressed by the trial court, is whether there existed evidence to establish a valid Indian divorce between appellant and decedent in 1961. Appellant's argument is essentially an argument on manifest weight of the evidence. When reviewing whether a judgment is against the manifest weight of the evidence, judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. However, the credibility of witnesses is an issue primarily for the trier of fact, who stands in the best position to evaluate such matters. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. If the evidence is susceptible of varied conclusions, this court must interpret it in a manner consistent with the findings of fact, verdict, and judgment of the trial court. *Ensman v. Ohio Dept. of Rehab. & Corr*, 10th Dist. No. 06AP–592, 2006-Ohio-6788, 2006 WL 3743070, ¶ 4, citing *Briscoe v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 02AP–1109, 2003-Ohio-3533, 2003 WL 21512808, ¶ 19.

{¶ 7} "Comity" is "a principle in accordance with which the courts in one state or jurisdiction will give effect to the laws and judicial decisions of another, not as a matter of obligation but out of deference and respect." *Bobala v. Bobala* (1940), 68 Ohio App. 63, 71, 20 O.O. 45, 33 N.E.2d 845. States are empowered, if they freely elect to do so, to recognize the validity of certain judicial decrees of foreign governments when they are found by the state of the forum to be valid under the law of the foreign state and when such recognition is harmonious with the public policy of the forum state. *Yoder v. Yoder* (1970), 24 Ohio App.2d 71, 72, 53 O.O.2d 193, 263 N.E.2d 913. Thus, in the interest of comity, an Ohio court will recognize a foreign decree as a matter of courtesy. *Mir v. Birjandi*, 2d Dist. No. 2006 CA 63, 2007-Ohio-3444, 2007 WL 1934219, ¶ 13.

{¶ 8} Where two marriages have been lawfully solemnized and the record is silent as to whether there has been a divorce of the parties to the first marriage, there is a presumption that the status of the parties to the first marriage continues, and the burden is upon the parties claiming the validity of the second marriage to overcome the presumption. *Indus. Comm. v. Dell* (1922), 104 Ohio St. 389, 135 N.E. 669, paragraph three of the syllabus. It cannot be presumed that parties once married have been divorced in the absence of proof, and there is no presumption of divorce in support of the legality of a later

marriage. *Dibble v. Dibble* (1950), 88 Ohio App. 490, 510, 45 O.O. 251, 100 N.E.2d 451.

{¶ 9} Here, there is no dispute between the parties that whether a valid divorce was executed between the parties is controlled by Indian law. Specifically, the parties agree that the Hindu Marriage Act of 1955 governs whether decedent and appellant were lawfully divorced in 1961. Section 2(1)(b) of the act provides that the act applies "to any person who is a Buddhist, Jaina or Sikh by religion." Here, there is no dispute that both appellant and decedent were Sikhs.

{¶ 10} Section 13 of the act, entitled "Divorce," provides that a marriage may be dissolved by a decree of divorce pursuant to a petition filed by either party based upon various listed grounds. However, Section 29(2) of the act also validates divorces pursuant to custom:

Nothing contained in this Act shall be deemed to affect any right recognised by custom or conferred by any special enactment to obtain the dissolution of a Hindu marriage, whether solemnized before or after the commencement of this Act.

{¶ 11} Section 3 of the act supplies the definition of "custom" as used in the act. Section 3(a) provides:

[T]he expressions "custom" and "usage" signify any rule which, having been continuously and uniformly observed for a long time, has obtained the force of law among Hindus in any local area, tribe, community, group or family:

Provided that the rule is certain and not unreasonable or opposed to public policy; and

Provided further that in the case of a rule applicable only to a family it has not been discontinued by the family[.]

{¶ 12} In the present case, the trial court found that Exhibits 1 and 2 demonstrated that the parties properly executed a customary divorce and that the exhibits were properly admitted into the record. Exhibit 1 was an original document in the language of Urdu, dated 1961, that bore the signature of decedent and the thumbprint of appellant, which indicated the parties' agreement to divorce. Exhibit 2 is a translation of Exhibit 1. The trial court found that Exhibit 1 was admissible as a properly authenticated ancient document under Evid.R. 803(16), 901(A), 902(B)(8), 804(B)(4), and 804(B)(5). The trial court also admitted Exhibits 10 and 11. Exhibit 10 was a letter from the clerk of Hoshiarpur court dated January 6, 2005, certifying that the records of cases and docket R26 had been destroyed by fire in 1998. Exhibit 11 was a copy of a Hoshiarpur court docket, R26, which showed the names of decedent and appellant in relation to a suit for declaration on the basis of decree of divorce. The court found that Exhibit 10 was properly admitted, pursuant to Evid.R. 902(3) and (4),

to show the unavailability of any public records that might confirm a formal, court-approved divorce between appellant and decedent. The court also found that Exhibit 11 was properly authenticated and admitted pursuant to Evid.R. 901(A) and (B).

{¶ 13} Furthermore, the trial court found that even if Exhibits 1 and 2 were insufficient to prove a customary divorce under Indian law, appellee had met her burden of overcoming the presumption of validity of the first marriage pursuant to *Dell*. The court reasoned that appellee had met her burden based upon appellant's and decedent's intent to terminate their marriage via Exhibits 1 and 2. The court found that appellant had waited until after decedent's death to challenge the legitimacy of his second marriage, that appellant knew that decedent had remarried only a few years after his first marriage terminated, that the two did not live together or have sexual relations with each other after 1962, and that appellant made no attempt to contact decedent after moving to Ohio.

{¶ 14} Appellant's main contention is that there was no evidence to demonstrate that she and decedent participated in a customary divorce. However, we agree with the trial court that Exhibits 1 and 2 demonstrate that appellant and decedent executed an agreement to divorce consistent with the customs in the region at the time of the agreement. The issue of whether Exhibits 1 and 2 were consistent with local customs at the time of their execution centered largely on a credibility determination between appellant and appellee. Appellee testified that there were Sikh customs in the Punjab in the 1960s in which one could be divorced by an agreement. One way to divorce, appellee indicated, was via a "panchayap," which involved appearing before five dignitaries of the village and explaining the situation, after which the five dignitaries could pronounce a couple divorced with no paperwork. Another way to divorce was a "tayagnama," in which one party would give the other a bill of divorce ending the marriage. She also said that one party could simply tell the other that he did not want to be with her, and they would be automatically divorced. She said the customs in the 1960s would not have required a bill of divorce issued through a court.

{¶ 15} To the contrary, appellant testified, via an interpreter, there was no custom for divorce while she was living in Baga, which is in the district of Hoshiarpur, where she lived while growing up. She stated that she was not aware of anyone in Baga who was divorced. She also denied that she ever went to a court of law to ask for a divorce, that decedent ever asked her for a divorce, or that she remembered ever signing or putting her fingerprint on a paper agreeing to divorce, although she admitted that the fingerprints and signatures on the divorce agreement were hers.

{¶ 16} Appellee's testimony could have provided competent, credible evidence for the trial court to find that the custom in the Punjab state of India included

executing a document like Exhibit 1. Appellee testified that she was familiar with the divorce customs for Sikhs in the Punjab in the 1960s. Appellee stated that Sikh customs in the Punjab in the 1960s included one party's giving the other a bill of divorce ending the marriage and simply telling the spouse that he does not want to be married anymore. Appellee specifically stated that the customs in the 1960s would not have required bills of divorce issued through a court. Although appellant complains that appellee's testimony did not speak to the custom specifically among members of the Ad–Dharmi tribe living in the Hoshiarpur District, Section 3(a) of the Hindu Marriage Act requires only that the custom be practiced in "any local area," "tribe," or "group," terms that are undefined in the statute. We believe that appellee's testimony was sufficient to substantiate that one custom in decedent and appellant's local area, tribe, or group was the execution of a document such as Exhibit 1. Appellant has presented this court with no specific reason to doubt appellee's testimony in this respect, and we must defer to the trial court's credibility determination.

{¶ 17} Besides direct evidence as to the customs in place in the early 1960s, appellee's testimony also presented several compelling circumstantial indicators that would support a finding that Exhibit 1 constituted a valid customary procedure for divorce in appellant and decedent's locale. Appellee testified that in addition to decedent's telling her he was divorced, all of decedent's friends and brothers told her that he was divorced. Appellee also stated that her and decedent's engagement party and marriage ceremony were very public events and were attended by hundreds of relatives and friends, some of whom knew appellant and were relatives of appellant. Appellee stated that the whole town attended the wedding. None of appellant's friends or relatives ever claimed that decedent was still married to appellant. Appellee further testified that bigamy is treated very seriously in India and that decedent could have been jailed or punished if he had actually still been married. Appellee said decedent would not have been permitted to attend college or engage in professional services had he been considered married to two women. Appellee testified that in all of the years she and decedent were married, she never knew of anyone who accused decedent of bigamy. These circumstances constitute very compelling circumstantial evidence that appellant and decedent, in fact, were validly divorced in the eyes of the group and tribe members in the local area.

{¶ 18} In addition, the testimony of appellant provided several indicators that she believed that she and decedent had executed a valid divorce in 1961 by way of Exhibit 1. Appellant testified that she became aware of decedent's remarrying two or three years after he remarried. Appellee testified that appellant had to have known about the wedding at the time of the ceremony, as she lived only a few miles away, and good news of a wedding would have been known throughout

the town. Regardless of precisely when she knew of decedent's wedding, it is undisputed that appellant never took any action or lodged any objection to decedent's remarriage for approximately 35 years. Appellant failed to testify that she ever complained to a single person that decedent had remarried while still married to her. Furthermore, appellant also testified that she never again cohabitated with decedent or engaged in sexual relations with decedent after 1962. Although appellant argues that she was powerless to do anything about decedent's remarriage because she was uneducated and lived in a small village, it strains credibility to believe that appellant would not have attempted to take at least some action in the subsequent years if she believed that she was still married to decedent, particularly in light of the fact that the two had children together. That she did not take even a single step in over three decades that would demonstrate that she thought she was still married to decedent raises a patent issue regarding appellant's credibility.

{¶ 19} The trial court also expressed doubt as to the credibility of appellant's testimony because of her memory problems. After reviewing the transcript of the hearing, we agree that appellant's credibility was severely undermined by her actual or claimed lack of memory. Appellant seems to be able to speak in absolutes about some events, most notably her denial that she and appellant had ever divorced or executed any document to that effect. However, she testified that she did not remember the year she was born, her age, the current date, or her four brothers' names. Her inability to remember these facts casts a shadow of dubiousness over her entire testimony, and we cannot find that the trial court erred in its credibility determination, as it was in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections. *Seasons Coal Co.*, 10 Ohio St.3d at 80, 10 OBR 408, 461 N.E.2d 1273.

{¶ 20} It is also noteworthy that Bahadur Bharmota, decedent and appellant's son, testified that when he moved to the United States, he lived with his father for three or four years, but Bahadur never testified as to any conversations between him and his father regarding the claim that decedent was still married to appellant. Also, after appellant moved in with Bahadur in Cleveland in 1996, appellant never made any attempt to contact decedent, and she never expressed any interest in seeing him whenever Bahadur visited him. Bahadur also never testified that his mother specifically claimed to him that she was still married to decedent. Thus, these circumstances also lend support to the fact that appellant believed that her and decedent's divorce in 1961 was valid pursuant to local customs.

{¶ 21} Appellant also contends that Exhibit 1 could not be relied upon because it was not validly executed pursuant to Indian law. Appellant cites *Anand Sawrup Data v. Punjab Natl. Bank & Ors.*, 1997(2) Civil Court Cases 44, at 46–

47, for the proposition that because appellant was illiterate, Indian law required that Exhibit 1 be read and explained to her so that she understood it, and evidence of her mere thumbprint on the document would be insufficient to prove it. Moreover, appellant never claimed at trial that the contents of Exhibit 1 were not explained to her or that she did not understand the import of Exhibit 1; rather, appellant testified only that she did not remember executing the document by placing her thumbprint on Exhibit 1. Appellant conceded that it was her thumbprint on the document, and the trial court specifically found appellant's testimony not credible with regard to her knowledge of the contents of the document. The surrounding circumstances sufficiently demonstrate that appellant was aware that she and decedent had effected a customary divorce in executing Exhibit 1.

{¶ 22} The trial court also found that even if Exhibits 1 and 2 were insufficient to prove a divorce under Indian law, appellee still met her burden of overcoming the presumption of validity of the first marriage pursuant to *Dell*. In *Dell*, at paragraph three of the syllabus, the court held:

Where it is stipulated that both marriages have been lawfully solemnized, and the record is silent as to whether there has been a divorce of the parties to the first marriage, there is a presumption that the status of the parties to the first marriage continues, and the burden is upon the parties claiming the validity of the second marriage to overcome such presumption.

{¶ 23} We agree that appellee met the burden of overcoming the presumption of a continuing marriage between appellant and decedent. Appellant's and appellee's testimony demonstrated intent on behalf of appellant and decedent to execute a valid divorce in India in 1961. After 1961, the parties lived separate lives, never engaged in sexual relations, and rarely even communicated. There was no evidence that appellant ever expressed to anyone that she was still married until filing the present action. Therefore, even if Exhibit 1 is insufficient standing alone to prove divorce, the compelling circumstances surrounding the parties and their actions since 1961 sufficiently demonstrate that appellant and decedent no longer believed themselves to be married and intended to be divorced as of 1961. Therefore, in this respect, appellee has also met her burden, pursuant to *Dell*, of overcoming the presumption that a valid marriage continued to exist between appellant and decedent after 1961.

{¶ 24} Having found Exhibit 1 to conform to a valid custom among Sikhs in the local area or group for obtaining a divorce, we cannot find that the use of this document was unreasonable or contravened public policy, and appellant has failed to present any argument to the contrary. Therefore, the trial court did not err when it concluded that appellant and decedent were divorced consistently with

the custom in appellant and decedent's local area pursuant to Section 3 of the Hindu Marriage Act.

{¶ 25} Furthermore, the trial court did not err when it admitted appellees' Exhibits 1 (1–1, 1–2, 1–3) and 2 into the record. A trial court has broad discretion to admit or exclude evidence, and in the absence of an abuse of discretion that results in material prejudice to a defendant, an appellate court should be slow to reverse evidentiary rulings. *Schultz v. Schultz* (1996), 110 Ohio App.3d 715, 726, 675 N.E.2d 55, citing *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 66, 567 N.E.2d 1291. "Abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

■ {¶ 26} The trial court found Exhibit 1 was admissible under Evid.R. 803(16), as a properly authenticated ancient document, and Evid.R. 804. We agree with the trial court that Exhibit 1 was admissible on both bases cited by the court. Evid.R. 803 provides:

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

* * *

**(16) Statements in ancient documents.** Statements in a document in existence twenty years or more the authenticity of which is established.

{¶ 27} Evid.R. 901 provides:

(A) General provision

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(B) Illustrations

By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

* * *

*(8) Ancient documents or data compilation.* Evidence that a document or data compilation, in any form, (a) is in such condition as to create no suspicion concerning its authenticity, (b) was in a place where it, if authentic, would likely be, and (c) has been in existence twenty years or more at the time it is offered.

{¶ 28} In the present case, Exhibit 1 was in existence for more than 20 years and met the requirement for authentication as an ancient document. The trial court noted that the document was in very good condition, with the signatures

and thumbprints readily identifiable; the document was found among decedent's papers upon his death, where a divorce record would likely be found; and the document was executed in 1961, well over 20 years prior to trial. Therefore, we agree with the trial court that the document was admissible as an ancient document.

{¶ 29} The trial court found that Exhibit 1 was also admissible pursuant to Evid.R. 804, which provides:

(A) Definition of unavailability

"Unavailability as a witness" includes any of the following situations in which the declarant:

* * *

(4) is unable to be present or to testify at the hearing because of death or then-existing physical or mental illness or infirmity[.]

* * *

**(B) Hearsay exceptions**

The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

* * *

*(4) Statement of personal or family history.* (a) A statement concerning the declarant's own * * * divorce[.]

{¶ 30} Here, decedent was deceased at the time of trial. Because he was unavailable to testify as a witness and Exhibit 1 was a statement concerning decedent's own divorce, Exhibit 1 was not excluded by the hearsay rule. Therefore, Exhibit 1 was also admissible as an exception to the hearsay prohibition based upon Evid.R. 804(B)(4). Furthermore, as found by the trial court, the accuracy of the translation of Exhibit 1 in Exhibit 2 was not contested; thus, Exhibit 2 was admissible as well. Accordingly, the trial court did not abuse its discretion when it admitted Exhibits 1 and 2.

{¶ 31} Appellant also contends that the trial court erred when it admitted appellees' Exhibits 10 and 11. The trial court found that Exhibit 10, which was a letter from the clerk of Hoshiarpur court dated January 6, 2005, certifying that the records of cases and docket R26 were destroyed by fire in 1998, was admissible as a foreign public document, pursuant to Evid.R. 902(3), and a certified copy of a public record, pursuant to Evid.R. 902(4). The trial court found Exhibit 11, which was a copy of a Hoshiarpur court docket showing the names of decedent and appellant in relation to a suit for declaration on the basis of decree of divorce, was admissible and properly authenticated by testimony of a witness with knowledge, pursuant to Evid.R. 901(B)(1), and as a public record, pursuant to Evid.R. 901(B)(7).

{¶ 32} The trial court concluded that although Exhibits 10 and 11 were not admissible to prove the existence of a customary divorce, they were admissible to prove that any court records that might have existed to demonstrate a formalized divorce in a court of law are no longer available. However, we need not address the admissibility of these two exhibits. We have already found above that Exhibits 1 and 2, as well as the surrounding circumstances, provided sufficient evidence to support a finding that decedent and appellant were divorced pursuant to customs existing in their local area and among their group. Whether additional evidence demonstrating a divorce pursuant to law may have existed, and whether such evidence is currently available, is not relevant and does not affect our determination.

{¶ 33} Based on the foregoing, we find that there was competent, credible evidence for the trial court to conclude that appellant and decedent obtained a valid divorce in India in 1961. In so doing, the trial court properly relied upon Exhibits 1 and 2, while Exhibits 10 and 11 were not necessary for that showing. Furthermore, the trial court properly found that even if Exhibits 1 and 2 alone were insufficient to prove customary divorce, appellee presented sufficient evidence, when considered in totality, to overcome the presumption in law that the marriage of decedent and appellant continued. For these reasons, the trial court properly deemed appellee the surviving spouse of decedent. Therefore, appellant's first, second, third, and fourth assignments of error are overruled.

{¶ 34} Accordingly, appellant's four assignments of error are overruled, and the judgment of the Franklin County Probate Court is affirmed.

Judgment affirmed.

BRYANT and SADLER, JJ., concur.