OPINION
{¶ 1} Dirk Ensman, plaintiff-appellant, appeals from a judgment of the Ohio Court of Claims, in which the court granted judgment in favor of the Ohio Department of Rehabilitation and Correction ("ODRC"), defendant-appellee.
 {¶ 2} Appellant is an inmate at Lebanon Correctional Institution ("LCI") and has been incarcerated since 1990. The facts underlying the present case were disputed at trial, and every witness who testified gave differing testimony, which will be detailed herein during our discussion of appellant's assignments of error. In general, on June 18, 2003, appellant and John Hauger, another inmate at LCI, engaged in a physical fight. Two LCI corrections officers, Jason Sponhaltz and "Bowen," arrived at the scene of the fight, and Sponhaltz subdued appellant. Sponhaltz handcuffed appellant, and he was removed from the area. Appellant later complained of ankle pain, and an x-ray of his ankle several days later revealed that appellant's ankle was broken. Appellant claimed Sponhaltz had broken his ankle.
 {¶ 3} On April 29, 2004, appellant filed a negligence action in the Ohio Court of Claims against the ODRC for the injuries he allegedly sustained as a result of Sponhaltz's actions. A liability only bifurcated trial was held in April 2005, and June 2005. On August 19, 2005, the magistrate issued a decision, in which it found the ODRC had not been negligent. Appellant filed an objection and, on May 15, 2006, the trial court issued a decision, in which it overruled appellant's objection and adopted the magistrate's decision. The court issued a judgment entry the same day. Appellant appeals the judgment of the trial court, asserting the following assignments of error:
 [I.] THE TRIAL COURT AND THE MAGISTRATE ERRED IN IGNORING THE PLAIN REQUIREMENTS OF THE OHIO ADMINISTRATIVE CODE WHICH DID NOT JUSTIFY USE OF FORCE BASED ON THE FACTS ACCEPTED BY THE COURT.
 [II] THE TRIAL JUDGE AND THE MAGISTRATE ERRED, THEIR DECISION NOT BEING SUPPORTED BY THE EVIDENCE, IS CONTRARY TO LAW AND AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 [III] THE TRIAL COURT AND MAGISTRATE ERRED BECAUSE THE RECORD DOES NOT SUPPORT A FINDING SPONHALTZ'S CONDUCT DID NOT CAUSE ENSMAN'S INJURY.
 {¶ 4} Appellant's three assignments of error are related and will be addressed together. Essentially, appellant asserts that the judgment of the trial court is against the manifest weight of the evidence and is contrary to law. Judgments supported by some competent, credible evidence going to all essential elements of the case will not be reversed as being against the manifest weight of the evidence. C.E.Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. In addressing a judgment of the trial court on the basis that the verdict is against the manifest weight of the evidence, an appellate court conducts the same manifest weight analysis in both criminal and civil cases. Flowers v. City of Whitehall, Franklin App. No. 01AP-1150, 2002-Ohio-3890, at ¶ 12. The court, reviewing the entire record, must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. However, the credibility of witnesses is an issue primarily for the trier of fact, who stands in the best position to evaluate such matters.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. If the evidence is susceptible to varied conclusions, this court must interpret it in a manner consistent with the findings of fact, verdict, and judgment of the trial court. Briscoe v. Ohio Dept. of Rehab. Corr, Franklin App. No. 02AP-1109, 2003-Ohio-3533, at ¶ 19.
 {¶ 5} In the present case, appellant alleges in his complaint that the ODRC is liable under a theory of negligence. For a claim based on negligence, the complaining party must prove by a preponderance of the evidence that the defendant breached a duty owed to him and that he sustained an injury proximately caused by the breach. Strother v.Hutchinson (1981), 67 Ohio St.2d 282, 285. Additionally, Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being. Clemets v. Heston (1985),20 Ohio App.3d 132, 136.
 {¶ 6} In Ohio Adm. Code 5120-9-01, the Ohio Administrative Code sets forth the circumstances under which correctional officers are authorized to use force against an inmate. We note that Ohio Adm. Code 5120-9-01 was amended effective July 1, 2004. Because the incident giving rise to appellant's complaint occurred in June 2003, we must use the version of Ohio Adm. Code 5120-9-01 in effect in 2003. See Watley v. Ohio Dept.of Rehab. Corr., Ct. of Cl. No. 2003-06123, 2006-Ohio-5670, at fn. 1. Former Ohio Adm. Code 5120-9-01 provided, in pertinent part:
 (B) As used in this rule and rule 5120-9-02 of the Administrative Code:
 (1) "Excessive force" means an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which is reasonably necessary under all the circumstances surrounding the incident.
 (2) "Force" means any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing.
 (C) There are six general situations in which a staff member may legally use force against an inmate:
 (1) Self-defense from an assault by an inmate;
 (2) Defense of third persons, such as other employees, inmates, or visitors, from an assault by an inmate;
 (3) Controlling or subduing an inmate who refuses to obey prison rules and regulations;
 (4) Prevention of crime, such as malicious destruction of state property or prison riot;
 (5) Prevention of escape; and
 (6) Controlling an inmate to prevent self-inflicted harm.
 * * *
 (E) The superintendent, administrator, or staff member of a correctional institution is authorized to use force, other than deadly force, when and to the extent he reasonably believes that such force is necessary to enforce the lawful rules and regulations of the institution and to control violent behavior.
 {¶ 7} With these provisions in mind, we must examine the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether in resolving conflicts in the evidence, the trial court clearly lost its way, and whether it created such a manifest miscarriage of justice that its judgment must be reversed. At trial, the testimony and evidence was as follows. Hauger, with whom appellant engaged in the fight, testified he was imprisoned for felonious assault. He testified that, on the day in question, appellant "sucker punched" him, he tried to fight with appellant, and he eventually went down on one knee. As appellant was falling toward him, but still on his feet, the guards tackled appellant and knocked him down.
 {¶ 8} Wesley Compton, an inmate at LCI in June 2003, testified he was imprisoned for aggravated murder. He stated that the first officer who arrived at the scene, Bowen, "took down" both Hauger and appellant because the two were holding on to each other so tightly. The next officer to arrive "tackled" appellant. When he was tackled, appellant was trying to stand after coming out from underneath the pile.
 {¶ 9} Vernon Mayse, appellant's friend, and an inmate at LCI in June 2003, testified he was incarcerated for rape and gross sexual imposition. He stated he saw appellant fighting with another inmate for about 15 to 20 minutes, both throwing punches, and then appellant put his hands up and said he was done. Appellant had backed away while Hauger was getting handcuffed. Two to three minutes later, Sponhaltz "attacked" appellant from the side. Sponhaltz then handcuffed appellant.
 {¶ 10} Antonio Mallory, an inmate at LCI in June 2003, testified he was incarcerated for felonious assault and aggravated robbery. He stated the fight between appellant and Hauger lasted no more than one minute. Mallory testified that Hauger was against the wall, and appellant was on the floor on his knees. An officer told appellant to "get down," and appellant obeyed but was then "tackled" by Sponhaltz. Appellant had not been resisting or been in any altercation with the officer when he was tackled. Other officers then piled on top of appellant, and he was handcuffed.
 {¶ 11} Elvin Burkhart, an inmate at LCI, testified he was incarcerated for aggravated arson and theft. He was good friends with appellant. Burkhart testified that Hauger started swinging at appellant, and appellant retaliated. The fight lasted between three to four minutes. He stated Hauger was staggering backward, and appellant was holding his hands in the air when Bowen and Sponhaltz arrived. Sponhaltz dove into appellant, and they fell onto the ground. At the time he was taken down, appellant was not fighting or doing anything threatening. Other guards then came in and handcuffed appellant.
 {¶ 12} Adam Wyhat, an inmate at LCI, testified that he was incarcerated for aggravated robbery. He stated that appellant and Hauger had a fistfight for 30 seconds. After 30 seconds, appellant kneeled down on his knees and put his hands in the air, while Hauger stood by a wall. Several guards came into the area, and then Sponhaltz tackled appellant. Appellant had not been doing anything threatening. Appellant fell backward, and the other guards got on top of him and handcuffed him.
 {¶ 13} Richard McCray, an inmate at LCI, testified he was incarcerated for rape and gross sexual imposition. He was close friends with appellant. He saw Hauger and appellant "slugging it out." The fight lasted approximately one to one and one-half minutes. It ended when appellant kneeled on his knees and put his hands in the air. Bowen and Sponhaltz ran toward the two telling them to stop. Bowen put Hauger up against a wall, but Sponhaltz lunged into appellant, and they fell.
 {¶ 14} Appellant testified that he was incarcerated for aggravated murder. He stated that Hauger called him a "bitch" and swung at him. He and appellant then engaged in a fistfight for two or two and one-half minutes. He stated the fight ended because Hauger was against a wall sliding down. He stated he saw Bowen and Sponhaltz running toward them, so he dropped to his knees and put his hands in the air. Sponhaltz dove on him, and, while they were on the floor, appellant told Sponhaltz that the fight had been over and there had been no need to be tackled. He stated when Sponhaltz tackled him, his ankle twisted and broke.
 {¶ 15} Sponhaltz testified he had been a correctional officer since 1999. He stated that he saw appellant and Hauger "slugging" each other using their fists, and he ran to the area. When he arrived at the scene, appellant was kneeling, but the two were still "grappling." He told the inmates to stop fighting, and they complied. Appellant was already lying on his side, and he never tackled appellant or stood on his ankle. He then handcuffed appellant without ever touching any part of his body. Sponhaltz testified that appellant did not look injured and did not complain of any injuries.
 {¶ 16} Although appellant claims that this case does not turn on witness credibility, we disagree. To the contrary, the foundation for analyzing the appropriateness of Sponhaltz's actions rests almost entirely upon witness credibility. The first issue that must be determined is what actually took place. Initially, we must ascertain the situation with which Sponhaltz was confronted when he arrived at the scene. The magistrate found the testimony of Sponhaltz to be the most credible. Sponhaltz's testimony was clear that Hauger and appellant were still "grappling" when he arrived at the scene. In its decision overruling appellant's objections, the trial court agreed that, based upon the evidence in the record, it was reasonable for the magistrate to believe Sponhaltz's testimony that the inmates were still "grappling" when he arrived. Accordingly, both the magistrate and the trial court believed the portion of Sponhaltz's testimony that Hauger and appellant were still "grappling" and engaged in the confrontation when Sponhaltz reached the location of the confrontation. This court has no reason to question the magistrate's factual determination in this regard. The magistrate was able to view the inmates and Sponhaltz during their testimony, observe their demeanor, gestures, and voice inflections, and use those observations to best determine who was telling the truth. SeeMyers v. Garson (1993), 66 Ohio St.3d 610, 615. Therefore, without any reason to challenge the magistrate's credibility determination, we must concur with his finding that the two inmates were still fighting when Sponhaltz arrived on the scene.
 {¶ 17} In addition, despite appellant's contention that every inmate who testified stated that the fight had ended by the time he was subdued, and he was complying with the officers' orders, a review of the testimony reveals that this is not an accurate summary of the evidence. Only the testimony of Mayse, Mallory, Wyhat, and McCray was fairly clear that the fight had ended when Sponhaltz reached appellant. Hauger testified that appellant was falling toward him and still on his feet when the guards tackled appellant. Compton stated Bowen "took down" both Hauger and appellant because they were holding on to each other so tightly, and that Sponhaltz "tackled" appellant only as he was trying to stand after sliding out from underneath the pile. Burkhart testified that Hauger was staggering backward when the guards arrived, which similarly suggests that the fight was still in its final stages. Thus, Hauger's, Burkhart's, and Compton's versions of the facts lend support to the magistrate's finding that the fight was still in progress when Sponhaltz arrived.
 {¶ 18} Given the above factual resolution, we must next decide whether the circumstances were such that Sponhaltz would have been legally permitted to use force against an inmate pursuant to Ohio Adm. Code 5120-9-01(C). Assuming as true that appellant and Hauger were still "grappling," appellant was falling toward Hauger, Hauger was still staggering backward, or appellant had squeezed out of Bowen's initial restraint at the time Sponhaltz used force to control him, we find the situation would have reasonably fit within the three general situations outlined in Ohio Adm. Code 5120-9-01(C)(2), (3), and (4). With two inmates fighting, intervention would have been necessary to defend employees and other inmates, to gain compliance with prison rules and regulations, and to prevent the malicious destruction of state property or the commencement of a prison riot.
 {¶ 19} It is also important to note that not even appellant's testimony was clear as to the relative positions of the relevant parties at the pertinent times. Appellant stated he saw Bowen and Sponhaltz running toward him, so he dropped to his knees and put his hands in the air. However, appellant does not indicate how far away the guards were at the time he dropped to his knees, which is critical to the determination of the reasonableness of Sponhaltz's actions. Consistent with appellant's testimony, Sponhaltz also testified he "ran" to the scene. If appellant dropped to his knees only when the guards were a short distance away, because they were running at full speed, the last punch may have been thrown only a few seconds before, leaving an inadequate span for the guards to determine if the fight had truly and completely ended. Thus, even under the scenario put forth by appellant, Sponhaltz's actions may have been justified under one of the general circumstances delineated in Ohio Adm. Code 5120-9-01(C)(2), (3), and (4).
 {¶ 20} Having found the situation was one in which Sponhaltz could legally use force against appellant, we must next determine whether the degree of the force used was within that permitted by Ohio Adm. Code 5120-9-01. Subsection (E) indicates that a staff member of a correctional institution is authorized to use force when and to the extent he reasonably believes that such force is necessary to enforce the lawful rules and regulations of the institution and to control violent behavior. As fighting between inmates is clearly "violent behavior" and prohibited conduct within a correctional institution, Sponhaltz was permitted to use that force he reasonably believed was necessary to stop it.
 {¶ 21} The decisions below are somewhat unclear as to the exact force the magistrate and trial court believed Sponhaltz used. The magistrate specifically found Sponhaltz's testimony credible. Sponhaltz's testimony was clear in that he claimed he did not tackle appellant or otherwise have any contact with him to break his ankle. He also stated he handcuffed appellant without touching him in any other manner. However, the magistrate stated in his decision that appellant's conduct required "intervention," Sponhaltz did not violate Ohio Adm. Code 5120-9-01 in his "effort to control" appellant, and Sponhaltz used only the amount of force reasonably necessary to enforce the rules and regulations of the institution. Thus, it appears that the magistrate did not believe Sponhaltz's testimony in full and believed at least some force was used to subdue appellant. The magistrate, as trier of fact, was free to believe all, part, or none of the testimony of any witness who appears before him. See State v. Long (1998), 127 Ohio App.3d 328, 335. The trial court recognized in its decision on appellant's objections that, although the magistrate indicated he had found Sponhaltz's testimony more credible than the inmates' testimony, the magistrate did not opine that no force was used against appellant. However, neither the magistrate nor the trial court ever explicitly indicated the precise level of force they believed Sponhaltz used.
 {¶ 22} Nevertheless, after reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot disagree with the trial court's ultimate conclusion that the degree of force was reasonable. If we were to believe Sponhaltz's testimony that he made no physical contact with appellant other than to place handcuffs on him, obviously, such force would have been reasonable. However, even if we were to conclude that Sponhaltz collided with appellant, we would still find the degree of force reasonable. If the inmates were still in the midst of "grappling," as Sponhaltz testified, Sponhaltz could have reasonably believed his method to gain control of appellant was necessary. Sponhaltz was running to reach the scene and was required to act immediately to put an end to the confrontation. Momentum was a natural consequence of Sponhaltz's having to run to the scene, and his momentum also served as a tool, and he could reasonably use the advantage of a moderate-velocity impact to separate two angry inmates in each other's grasp.
 {¶ 23} Further, even if we were to assume appellant had obeyed the guards' order to stop fighting and had raised his hands some moments before Sponhaltz took his action, Sponhaltz could not have predicted whether one of the two men would try to lunge at the other again or continue to provoke the other into further violent behavior. The only way to assure that the assault would stop, that no employee or inmate would be injured, and that no property would be destroyed was to physically control one of the inmates. If, under this factual scenario, the two inmates had only separated seconds before, their passions undoubtedly would have still been high and their tempers yet to cool. Under such circumstances, Sponhaltz's mode of entry into the affray was a reasonable decision to assure that the fight would end immediately and the inmates would cause no further harm. It has been recognized before that the use of force is an obvious reality of prison life, and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer. SeeMason v. Ohio Dept. of Rehab. Corr. (1990), 62 Ohio Misc.2d 96,101-102. Although we can envision circumstances under which a guard's "diving" into an inmate may constitute excessive force, under the circumstances of this case, and with the state of present record, we find that, if Sponhaltz indeed partook of such actions, they would have been reasonable and necessary to stop the inmates' violent behavior. Thus, under any of the above circumstances, we would find the degree of force was not excessive.
 {¶ 24} We point out that appellant also argues that the trial court erred when it found that the record did not support a finding that Sponhaltz's conduct did not cause appellant's broken ankle, and includes this argument in his third assignment of error. The degree of an injury might, in some cases, be an indicator of the amount of force used or be useful in resolving a factual dispute, and thereby be relevant to determining the excessiveness issue. See, e.g., Watley v. Ohio Dept. ofRehab. Corr., Ct. of Cl. No. 2004-09061, 2006-Ohio-1109, at ¶ 21
(inmate's credibility regarding his version of the incident was undermined by the medical report indicating that he suffered only minor injuries). However, the degree of the injury becomes irrelevant where evidence in the record supports the trial court's determination that appellant's injury was not caused by Sponhaltz. Thus, we find this argument without merit.
 {¶ 25} For these reasons, we conclude the finder of fact did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. Therefore, appellant's first, second, and third assignments of error are overruled.
 {¶ 26} Accordingly, appellant's three assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
Judgment affirmed.
 PETREE and FRENCH, JJ., concur.