[Cite as *Russell v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4695.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Mark R. Russell, :

      Plaintiff-Appellant, :

v. :

Ohio Department of Rehabilitation :
and Correction,

      Defendant-Appellee. :

       :

No. 19AP-424
(Ct. of Cl. No. 2018-00978JD)

(ACCELERATED CALENDAR)

---

D E C I S I O N

Rendered on November 14, 2019

---

**On brief:** *Mark R. Russell*, pro se.

**On brief:** *Dave Yost,* Attorney General, and *Howard H. Harcha, IV*, for appellee.

---

APPEAL from the Court of Claims of Ohio

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, Mark R. Russell, appeals from a judgment of the Court of Claims of Ohio granting the motion for summary judgment filed by defendant-appellee, Ohio Department of Rehabilitation and Correction ("ODRC"). For the following reasons, we reverse and remand.

**I. Facts and Procedural History**

{¶ 2} On June 21, 2018, Russell, an inmate in the custody and control of ODRC, filed a verified complaint alleging ODRC corrections officers used excessive force against him at the Pickaway Correctional Institution during a "shakedown" on June 30, 2016. (Compl. at 1.) Russell specifically alleged the officers grabbed him "[threw] him against the wall handcuffed him and sprayed him with mace." (Compl. at 1.) He was "also punched

several times in the ribs." (Compl. at 1.) He further alleged that after he was taken out of the bed-area into the dayroom area, he was "slammed to the ground" and again sprayed with chemical mace. (Compl. at 1.) He claimed that he sustained lasting injuries to his eyes and ribcage as a result of the corrections officers' use of force.

{¶ 3} In March 2019, ODRC moved for summary judgment, arguing its corrections officers used reasonable force to control and subdue Russell during the shakedown of the dormitory at Pickaway Correctional Institution. In support, ODRC submitted affidavits, along with incident reports, of three corrections officers involved in the confrontation with Russell on June 30, 2016. These corrections officers generally averred that as they were conducting the shakedown of the dormitory, Russell acted disorderly and became disrespectful toward the officers. Because Russell did not comply with instructions for him to be quiet and return to his living quarters, Corrections Officer Victor Bologna placed him against the wall and ordered him to stop resisting. Russell did not comply with the directives. Corrections Officer Cody Borling dispensed a short burst of chemical mace toward Russell's face. Russell was then handcuffed. As he was being escorted out of the area, he continued to be physically and verbally combative. Consequently, he was "then taken to the ground and remained uncooperative." (Ex. A, Bologna Aff. at ¶ 4, attached to Mar. 25, 2019 Def.'s Mot. for Summ. Jgmt.) Corrections Officer Richard Hayes dispensed a short burst of chemical mace on Russell to stop his continued resistance. After this second application of chemical mace, Russell became compliant. All three officers averred that no further force was used against Russell.

{¶ 4} Russell filed a memorandum in response to ODRC's motion for summary judgment. He argued in part that ODRC did not address his allegations relating to the injury to his ribcage. He also attached an unauthenticated copy of a document captioned Deputy Warden of Operations Review of Use of Force, which according to him failed to document the use of chemical mace on him.

{¶ 5} In June 2019, the trial court granted ODRC's motion for summary judgment. The trial court considered the document Russell submitted, and found that it corroborated the account of the incident by ODRC's corrections officers. The trial court concluded that the evidence that ODRC submitted was unrebutted and demonstrated that the force used against Russell was necessary and reasonable under the circumstances.

{¶ 6} Russell timely appeals.

## II. Assignments of Error

{¶ 7} Russell assigns the following errors for our review:

[1.] The Court of Claims erred when it granted defendant's motion for summary judgment in violation Civil Rule 56(c) and appellant's 6th and 14th amendment rights of the U.S. Constitution.

[2.] Appellant's case/claim was not adjudicated by an impartial tribunal in violation of his Ohio and United States Constitutional rights.

(Sic passim.)

## III. Discussion

### A. First Assignment of Error – Summary Judgment

{¶ 8} Russell's first assignment of error alleges the trial court erred in granting summary judgment in favor of ODRC. We agree.

{¶ 9} An appellate court reviews the granting of summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994). Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 10} Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims. *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997). Once the

moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

{¶ 11} Here, Russell sued ODRC for the use of excessive force. Allegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence. To prove a claim for battery, a plaintiff must demonstrate that the defendant "act[ed] intending to cause a harmful or offensive contact, and * * * a harmful contact result[ed]." *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988). A defendant may defeat a battery claim by establishing a privilege or justification defense. *Id.*; *Wheeler v. Hagood*, 12th Dist. No. CA95-03-025 (Sept. 11, 1995). However, "the use of excessive force by one privileged to use force on another may constitute battery." *Shadler v. Double D. Ventures, Inc.*, 6th Dist. No. L-03-1278, 2004-Ohio-4802, ¶ 19.

{¶ 12} To prove actionable negligence, a plaintiff must show the existence of a duty, breach of that duty, and injury proximately caused by the breach. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989). The state owes a duty to inmates to reasonably care for the inmates' health, care, and well-being. *Miller v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 12AP-12, 2012-Ohio-3382, ¶ 12; *Ensman v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-592, 2006-Ohio-6788, ¶ 5.

{¶ 13} The " 'use of force is an obvious reality of prison life, and the precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer.' " *Miller* at ¶ 13, quoting *Ensman* at ¶ 23; *see* Ohio Adm.Code 5120-9-01(A) ("As the legal custodians of a large number of potentially dangerous inmates, prison officials and employees are confronted with situations in which it may be necessary to use force to control inmates or respond to resistance."). Ohio Adm.Code 5120-9-01 provides guidance for determining whether a corrections officer's use of force is reasonable. Under Ohio Adm.Code 5120-9-01(B)(1), "force" means "the exertion or application of a physical compulsion or constraint." Corrections officers considering the use of force must evaluate the need to use force based on the circumstances as known and perceived at the time it is considered. Ohio Adm.Code 5120-9-01(C)(1). Ohio Adm.Code 5120-9-01(C)(2) identifies

six general circumstances under which a corrections officer may use less-than-deadly force against an inmate. Those circumstances include:

> (a) Self-defense from physical attack or threat of physical harm.
>
> (b) Defense of another from physical attack or threat of physical attack.
>
> (c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.
>
> (d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance.
>
> (e) Prevention of an escape or apprehension of an escapee; or
>
> (f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm.

{¶ 14} In addition to addressing the circumstances under which a corrections officer may use force, Ohio Adm.Code 5120-9-01 also provides direction regarding the extent and amount of the force an officer should use. Pursuant to Ohio Adm.Code 5120-9-01(C)(1)(a), corrections officers "may use force only to the extent deemed necessary to control the situation." And they "should attempt to use only the amount of force reasonably necessary under the circumstances to control the situation and shall attempt to minimize physical injury." Ohio Adm.Code 5120-9-01(C)(1)(b). "Excessive force" means "an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident." Ohio Adm.Code 5120-9-01(B)(3).

{¶ 15} ODRC submitted affidavits, with incident reports attached, of three corrections officers involved in the confrontation with Russell on June 30, 2016, in support of its summary judgment motion. This evidence indicated that Russell was disorderly and disrespectful when corrections officers were conducting a shakedown at the Pickaway Correctional Institution dormitory. Because of Russell's combative behavior, the officers placed Russell against the wall and sprayed chemical mace at him, but he continued to resist. Even after being handcuffed, Russell had to be taken to the ground and again sprayed with chemical mace. Once Russell was controlled and subdued, he was escorted

from the location. The corrections officers denied using any other force on Russell. Thus, these averments indicated that the force used was necessary and reasonable under the circumstances. But the record also contained contrary evidence that was not considered by the trial court.

{¶ 16} Sworn pleadings, such as a verified complaint, constitute evidentiary material under Civ.R. 56(C). *Columbus v. Bahgat*, 10th Dist. No. 10AP-943, 2011-Ohio-3315, ¶ 15. "Consequently, a trial court can accept factual averments in a verified complaint as evidence, but only to the extent that those averments are within the personal knowledge of the affiant who verified the complaint." *Id.* Here, Russell signed an affidavit that verified the factual allegations in the complaint. Thus, Russell's verified complaint constituted evidentiary material that could be considered in resolving ODRC's summary judgment motion. *See id.* In his verified complaint, Russell averred, among other things, that he was punched several times in the ribs, and that these strikes caused lasting injury. Therefore, the record contained evidentiary material that demonstrated a genuine dispute over whether the force used was reasonable. Consequently, the trial court erred in granting ODRC's summary judgment motion.

{¶ 17} Accordingly, we sustain Russell's first assignment of error.

**B. Second Assignment of Error – Impartial Tribunal**

{¶ 18} In his second assignment of error, Russell alleges his rights were violated in the trial court because the case was not resolved by an impartial tribunal. He asserts the judge should have recused himself from this matter due to a purported conflict of interest. While our disposition of Russell's first assignment of error results in the reversal of the trial court's judgment, his second assignment of error remains ripe for review because we are remanding this matter for further proceedings.

{¶ 19} The proper procedure to seek judicial disqualification of a Court of Claims judge is to file an affidavit of disqualification with the clerk of the Supreme Court of Ohio pursuant to R.C. 2743.041. Only the chief justice or his or her designee has authority to rule on an affidavit of disqualification. R.C. 2701.03; R.C. 2743.041; *see Day v. Ohio Dept. of Rehab. & Correction (In re McGrath)*, 149 Ohio St.3d 1224, 2016-Ohio-8601, fn. 1 (R.C. 2743.041 "provides that the procedures for filing and deciding an affidavit of disqualification against judges of the court of common pleas under R.C. 2701.03 also apply

to affidavits of disqualification against judges of the court of claims."). Thus, this court has no authority to rule on a request to disqualify a trial court judge from presiding over a particular case. *Cline v. Mtge. Electronic Registration Sys., Inc.,* 10th Dist. No. 13AP-240, 2013-Ohio-5706, ¶ 32.

{¶ 20} Accordingly, we overrule Russell's second assignment of error.

**IV. Disposition**

{¶ 21} Having sustained Russell's first assignment of error and overruled his second assignment of error, we reverse the judgment of the Court of Claims of Ohio and remand this matter to that court for further proceedings consistent with law and this decision.

*Judgment reversed;*
*cause remanded.*

KLATT, P.J., and NELSON, J., concur.

––––––––––––––––––––