[Cite as *Ealom v. Ohio Dept. of Rehab. & Corr.*, 2025-Ohio-3141.]

## IN THE COURT OF CLAIMS OF OHIO

| | |
|---|---|
| ANTHONY EALOM | Case No. 2024-00024JD |
| Plaintiff | Magistrate Adam Z. Morris |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF REHABILITATION AND CORRECTION | |
| Defendant | |

{¶1} Plaintiff brought this action alleging negligence on the part of Defendant, Ohio Department of Rehabilitation and Correction (ODRC), related to physical injuries he incurred as a result of Defendant's excessive use of force involving Oleoresin Capsicum (OC) spray and Defendant's subsequent failure to provide him with proper decontamination.[1]

---

[1] Plaintiff's Complaint ultimately presents only state law negligence claims for trial. To the extent Plaintiff's Complaint can be construed as raising other claims, those claims shall not be determined on the merits by the Court.

To the extent Plaintiff seeks to directly challenge Defendant's execution of internal policy and procedure, specifically the use of force policy and alleged decontamination policy, "ODRC is generally immune from tort liability arising from decisions regarding its policies and procedures. This immunity, commonly referred to as sovereign or discretionary immunity, provides that 'the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.'" *Hughes v. Ohio Dept. of Rehab. & Corr.*, 2010-Ohio-4736, ¶ 16-17 (10th Dist.), quoting *Reynolds v. State*, 14 Ohio St.3d 68, 70 (1984); *Peters v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-2668, ¶ 10 (10th Dist.); *see also Wolfe v. Ohio Dept. of Rehab. & Corr.*, 2015-Ohio-3985, ¶ 10 (10th Dist.) ("Prison inmates, therefore, have no right to recover against ODRC when it violates administrative code provisions. . .."). Furthermore, it has been consistently held that prison regulations, including those contained in the Ohio Administrative Code (OAC), "are primarily designed to guide correctional officials in prison administration rather than to confer rights on inmates." *State ex rel. Larkins v. Wilkinson*, 79 Ohio St.3d 477, 479 (1997), citing *Sandin v. Conner*, 515 U.S. 472, 481-482 (1995). "A breach of internal regulations in itself does not constitute negligence." *Moore v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-767, ¶ 8 (10th Dist.), citing *Horton v. Ohio Dept. of Rehab. & Corr.*, 2005-Ohio-4785, ¶ 29 (10th Dist.)

To the extent Plaintiff seeks to bring a constitutional claim for conditions of confinement, it is well settled that this Court is without jurisdiction to consider claims premised upon alleged violations of the

{¶2} The case proceeded to trial before the undersigned Magistrate.[2]  For the following reasons, the Magistrate recommends judgment be entered in favor of Defendant.

## Background

United States Constitution.  *Guillory v. Ohio Dept. of Rehab. & Corr.*, 2008-Ohio-2299, ¶ 12 (10th Dist.).  "The Court of Claims is a court of limited jurisdiction and may exercise only that jurisdiction specifically conferred upon it by the General Assembly."  *Littleton v. Holmes Siding Contr., Ltd.*, 2013-Ohio-5602, ¶ 8 (10th Dist.).  Because the state has consented to be sued in accordance with the rules applicable to private persons, "a plaintiff in the Court of Claims is limited to causes of action which he could pursue if defendant were a private party."  *Thompson v. S. State Community College*, 1989 Ohio App. LEXIS 2338 (10th Dist. June 15, 1989).  Because constitutional violations require an element of state action, they present no viable cause of action in the Court of Claims.  *Hamilton v. Ohio Dept. of Rehab. & Corr.*, 2007-Ohio-1173, ¶ 14 (10th Dist.).  It is also a well-established principle of law that the state of Ohio is not a "person" within the meaning of Section 1983, Title 42, U.S. Code; therefore, such actions cannot be brought against the state.  *White v. Chillicothe Corr. Inst.*, 1992 Ohio App. LEXIS 6718 (10th Dist. Dec. 29, 1992).  Inmate complaints regarding the conditions of confinement are treated as claims arising under Section 1983, Title 42, United States Code.  *State ex rel. Carter v. Schotten*, 70 Ohio St.3d 89, 91 (1994).  Such actions are not actionable in this Court, and this Court is without jurisdiction to hear such claims.  *See Farmer v. Brennan*, 511 U.S. 825 (1994) (under the Eighth Amendment to the U.S. Constitution, prison officials have a duty to provide humane conditions of confinement including adequate food, clothing, shelter, and medical care.).

To the extent Plaintiff seeks to bring an assault and battery claim against Defendant for the use of the OC spray, Plaintiff has failed to meet the applicable one-year statute of limitations.  Under Ohio law, "[a]llegations of use of unnecessary or excessive force against an inmate may state claims for battery and/or negligence."  *Brown v. Ohio Dept. of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 13 (10th Dist.).  "[T]he tort of assault is defined as the willful threat or attempt to harm or touch another offensively, which threat or attempt reasonably places the other in fear of such contact."  *Smith v. John Deere Co.*, 83 Ohio App.3d 398, 406 (10th Dist. 1993).  "A person is subject to liability for battery when he acts intending to cause a harmful or offensive contact, and when a harmful contact results."  *Love v. Port Clinton*, 37 Ohio St.3d 98, 99 (1988); *see also Estill v. Waltz*, 2002-Ohio-5004, ¶ 20 (10th Dist.) ("[a] person need not intend the harmful result; to intend the offensive contact that causes the injury is sufficient").  "Contact which is offensive to a reasonable sense of personal dignity is offensive contact."  *Love* at 99.  R.C. 2743.16(A) provides, "civil actions against the state . . . shall be commenced no later than two years after the date of accrual of the cause of action or within any shorter period that is applicable to similar suits between private parties."  R.C. 2305.111(B) provides that "an action for assault or battery shall be brought within one year after the cause of the action accrues."  R.C. 2305.111(B) further provides that a cause of action for assault or battery accrues upon the date on which the alleged assault or battery occurred.  Plaintiff's allegations stem from a September 27, 2022 incident, but he filed his Complaint outside the one-year statute of limitations on January 18, 2024.  *See Brown v. Holiday Inn Express & Suites*, 2018-Ohio-3281, ¶ 10 (10th Dist.) ("When a cause of action arises from an intentional, offensive touching, that cause of action is subject to the one-year period of limitations applicable to battery claims under R.C. 2305.111(B) regardless of the form the cause of action takes."); *see also Love* at 98 ("[W]hen bodily injury results from an assault or battery, the one-year statute of limitations, R.C. 2305.111, is applicable.").

[2] Due to scheduling issues, trial was conducted on two days: July 10, 2025, and July 29, 2025.

{¶3} Plaintiff presented testimony on his own behalf as a sworn witness under oath as well as presented witness testimony via subpoena from Defendant's employees Unit Manager Felepa Lowery, Maintenance/Construction Superintendent Louis Savric, Nurse Brad Bahler, and Nurse Ronnie Roberts.[3]

{¶4} Plaintiff moved for the admittance of exhibits into evidence. The Magistrate admitted Plaintiff's Exhibits A (to the extent not excluded by hearsay), E, G, J, K, L, M, N and Defendant's Exhibits 2, 4, 8, 9, 10, 11 into evidence. Upon sustained objection, the Magistrate excluded Plaintiff's Exhibits B, F, H, I, and O from being admitted into evidence.

{¶5} Trial proceeded to Defendant's case-in-chief.

{¶6} Defendant presented witness testimony from its employees Captain Kenneth McKay, Unit Management Chief Melissa Spatny, Lieutenant James Davis, and Assistant Healthcare Administrator Stephanie Dicert.

{¶7} Defendant moved for the admittance of exhibits into evidence. The Magistrate admitted Defendant's Exhibits 1, 3, 5, 6, 7 into evidence.

{¶8} Upon review, based on the evidence presented, the undersigned Magistrate issues the following findings of fact and conclusions of law.

**Findings of Fact**

{¶9} On September 27, 2022, Plaintiff, an inmate then in the custody and control of Defendant at its Trumbull Correction Institution (TCI), was involved in a physical altercation with another inmate during chow, which ended in OC spray being deployed toward Plaintiff.

{¶10} Plaintiff was attacked from behind by another inmate in an area crowded with other inmates. Plaintiff was not the initial aggressor but did engage with the other inmate during the altercation. Corrections Officers (CO) responded to the commotion, but neither inmate responded to oral directives to stop fighting. CO Mason physically separated the other inmate from Plaintiff. CO Mason had his back turned to Plaintiff while in the process of physically restraining the other inmate. Plaintiff, however, was not physically restrained

---

[3] Nurse Jordan Smith was on Plaintiff's witness list, but was not called as a witness because the subpoena was not properly served.

and remained focused and moving in the direction of CO Mason and the other inmate, which resulted in CO DeRubba's use of force, deploying a single burst of 38 grams of OC spray toward Plaintiff. CO DeRubba did not witness the beginning of the altercation and arrived while Plaintiff and the other inmate were engaged in the fight and CO Mason was attempting to restrain the other inmate.

{¶11} Defendant's use of force policy requires that COs use the least amount of force possible to protect staff and other inmates, which can include oral directives, physical restraint, and OC spray. Defendant's policy is to decontaminate as soon as safely possible after a use of force incident involving OC spray, but there are no strict time guidelines. Moreover, decontamination is not the same for every circumstance. Removing the affected individual from the area where the OC spray was deployed starts the decontamination process. Fresh air, water, eye drops, and other methods can be used in decontamination, but all are not necessary or required in every decontamination. Fresh air is consistently deemed the best decontamination method available. "When it is safe and possible to do so following the use of force, medical attention shall [also] be provided even when the incarcerated individual does not appear to be injured." (Plaintiff's Exhibit G).

{¶12} After the use of force, Plaintiff was immediately removed from the area where the OC spray was deployed, which began his decontamination. Plaintiff was transported outside, across the approximately 100-yard open air courtyard, to the TPU segregation unit. Plaintiff was placed in a strip cage in TPU segregation, where he was seen by Nurse Smith for medical attention. Plaintiff was provided water in the strip cage for his subjective complaint of OC spray in his mouth, but the nurse's objective evaluation found no injuries at that time. Plaintiff made no complaint about eye irritation issues at that time. (Defendant's Exhibit 8).

{¶13} After being evaluated by Nurse Smith, Plaintiff was released to TPU Range 3, Cell 125 (TPU-125). TPU cells at TCI have a sink, toilet, and shower, with each fixture having its own dedicated water line. If a cell has no working water for any of the fixtures, then an inmate is moved to another cell. Plaintiff was assigned to TPU-125, which was undergoing repairs to the sink and toilet, but had no documented indication that the shower was not working properly. (Plaintiff's Exhibit E).

{¶14} On September 28, 2022, Plaintiff was seen by Nurse Bahler at his cell door for eye irritation and a small cut under his right eye, which was the first nurse documentation of eye irritation issues.  Plaintiff was provided ointment and eye wash/eye drops.  (Defendant's Exhibit 9).

{¶15} On September 29, 2022, after being released from TPU, Plaintiff was seen by Nurse Roberts for ongoing eye irritation issues.  Plaintiff's face and scalp were washed with water.  (Defendant's Exhibit 10).

{¶16} On October 1, 2022, Plaintiff was seen a final time by Nurse Bahler for ongoing eye irritation issues, which the nurse noted appeared to be raw/excoriated but improving.  Plaintiff was provided ointment and eye wash/eye drops.  (Defendant's Exhibit 11).

**Conclusions of Law**

{¶17} To prevail on a negligence claim, a plaintiff must prove by a preponderance of the evidence that defendant owed plaintiff a duty, that defendant's acts or omissions resulted in a breach of that duty, and that the breach proximately caused plaintiff's injuries. *Armstrong v. Best Buy Co., Inc.*, 2003-Ohio-2573, ¶ 8, citing *Menifee v. Ohio Welding Prods., Inc.*, 15 Ohio St.3d 75, 77 (1984).  "Ohio law imposes a duty of reasonable care upon the state to provide for its prisoners' health, care, and well-being." *Ensman v. Ohio Dept. of Rehab. & Corr.*, 2006-Ohio-6788, ¶ 5 (10th Dist.).

{¶18} The credibility of witnesses and the weight attributable to their testimony are primarily matters for the trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus.  The court is free to believe, or disbelieve, all or any part of each witness's testimony.  *State v. Antill*, 176 Ohio St. 61 (1964).  The Magistrate finds the consistent testimony of Defendant's employees, corroborated by the admitted exhibits, more credible and persuasive than Plaintiff's testimony.

*Excessive Use of Force*

{¶19} "Allegations of use of unnecessary or excessive force against an inmate may state claims for . . . negligence." *Brown v. Dept. of Rehab. & Corr.*, 2014-Ohio-1810, ¶ 13 (10th Dist.).  When a plaintiff's allegations involve a correctional officer's use of force

against an inmate, "Ohio Adm. Code 5120-9-01 provides guidance for determining whether a correctional officer's use of force is privileged and/or reasonable." *Id*. at ¶ 15.

{¶20} "The use of force is sometimes necessary to control inmates." *Jodrey v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-289, ¶ 17 (10th Dist.). "Correctional officers considering the use of force must evaluate the need to use force based on the circumstances as known and perceived at the time it is considered." *Brown* at ¶ 15, citing Ohio Adm.Code 5120-9-01(C). "[T]he precise degree of force required to respond to a given situation requires an exercise of discretion by the corrections officer." *Ensman* at ¶ 23. "In Ohio Adm.Code 5120-9-01, the Ohio Administrative Code sets forth the circumstances under which correctional officers are authorized to use force against an inmate." *Id.* at ¶ 6.

{¶21} Ohio Adm.Code 5120-9-01 provides, in part:

(C) Guidelines regarding the use of force. . . .

. . .

(2) Less-than-deadly force. There are six general circumstances in which a staff member may use force against an inmate or third person. A staff member may use less-than-deadly force against an inmate in the following circumstances:

(a) Self-defense from physical attack or threat of physical harm.

(b) Defense of another from physical attack or threat of physical attack.

(c) When necessary to control or subdue an inmate who refuses to obey prison rules, regulations or orders.

(d) When necessary to stop an inmate from destroying property or engaging in a riot or other disturbance.

(e) Prevention of an escape or apprehension of an escapee; or

(f) Controlling or subduing an inmate in order to stop or prevent self-inflicted harm.

{¶22} "Pursuant to Ohio Adm.Code 5120-9-01(C)(1)(a), correctional officers 'may use force only to the extent deemed necessary to control the situation.'" *Brown* at ¶ 16. "Additionally, correctional officers 'should attempt to use only the amount of force reasonably necessary under the circumstances to control the situation and shall attempt

to minimize physical injury.'"   *Id.*, quoting Ohio Adm.Code 5120-9-01(C)(1)(b). "'Excessive force' means 'an application of force which, either by the type of force employed, or the extent to which such force is employed, exceeds that force which reasonably appears to be necessary under all the circumstances surrounding the incident.'"  *Russell v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4695, ¶ 14 (10th Dist.), quoting Ohio Adm.Code 5120-9-01(B)(3).

{¶23} Upon review of the evidence, the Magistrate concludes that Defendant has established by a preponderance of the evidence that it did not violate the duty of care owed to Plaintiff because its COs were justified and privileged to use reasonable force against Plaintiff, which did not amount to an excessive use of force.  The altercation involving Plaintiff and the other inmate occurred in a crowded inmate accessible area of TCI.  Plaintiff was engaged in the physical altercation when COs responded to the commotion.  Plaintiff refused oral directives from COs as they attempted to stop the altercation.  CO Mason physically restrained the other inmate against the wall with his back turned to Plaintiff.  But Plaintiff was not physically restrained and remained focused and moving in the direction of CO Mason and the other inmate.  CO DeRubba's use of force was a single burst of OC spray deployed toward Plaintiff to gain compliance under the circumstances presented.  COs are authorized to use force in the "[d]efense of another from physical attack or threat of attack" and/or "[s]elf-defense from physical attack or threat of physical attack."  Adm.Code 5120-9-01(C)(2)(a); see *Ensman* at ¶ 23.  And COs are authorized to use force "to control or subdue an inmate who refuses to obey prison rules, regulations or orders" and/or "to stop an inmate from destroying property or engaging in a riot or other disturbance."  Adm.Code 5120-9-01(C)(2)(c)-(d); *Carney v. Ohio Dept. of Rehab. & Corr.*, 2022-Ohio-1599, ¶ 9 (Ct. of Cl.).

{¶24} Upon review, under the totality of the circumstances, the Magistrate concludes that CO DeRubba was privileged in deploying OC spray toward Plaintiff to gain his compliance, after oral directives failed to gain his compliance, during a physical altercation in a crowded inmate area with an ongoing threat of altercation with the other inmate and CO Mason's back turned toward Plaintiff.  Moreover, there was no credible evidence presented that the amount of OC spray was somehow excessive or that some other means could have been used to gain Plaintiff's compliance.

{¶25} Accordingly, the Magistrate concludes that Defendant's use of OC spray was reasonable and justified under the circumstances.

*Failure to Decontaminate*

{¶26} "In the context of a custodial relationship between the state and its prisoners, the state owes a common-law duty of reasonable care and protection from unreasonable risks." *Jenkins v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-5106, ¶ 8 (10th Dist.). "The state, however, is not an insurer of inmate safety and owes the duty of ordinary care only to inmates who are foreseeably at risk." *Franks v. Ohio Dept. of Rehab. & Corr.*, 2013-Ohio-1519, ¶ 17 (10th Dist.). "Reasonable care is that degree of caution and foresight an ordinarily prudent person would employ in similar circumstances, and includes the duty to exercise reasonable care to prevent an inmate from being injured by a dangerous condition about which the state knows or should know." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, 2004-Ohio-5545, ¶ 16 (10th Dist.).

{¶27} "If an injury is the natural and probable consequence of a negligent act and it is such as should have been foreseen in the light of all the attending circumstances, the injury is then the proximate result of the negligence. It is not necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Cascone v. Herb Kay Co.*, 6 Ohio St.3d 155, 160 (1983), quoting *Neff Lumber Co. v. First Natl. Bank of St. Clairsville*, 122 Ohio St. 302, 309 (1930).

{¶28} Plaintiff's claim is predicated on medical assistance and water not being made available for use during the decontamination process, which sounds in ordinary negligence. *See Gibson v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-4955, ¶ 15 (10th Dist.), citing *Foy v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-1065, ¶ 23 (10th Dist.) ("[A]n inmate's claim against ODRC based on the negligent acts or omissions of ODRC's medical staff sound in ordinary negligence, rather than medical malpractice, where the claimed negligence occurs in a medical context but does not arise in the course of medical diagnosis, care, or treatment of the inmate."). However, the evidence ultimately contradicts Plaintiff's assertion.

{¶29} Upon review of the evidence, the Magistrate concludes that Plaintiff has failed to establish by a preponderance of the evidence that Defendant breached its duty

of ordinary care related to decontamination after a use of force incident involving OC spray. Defendant's decontamination policy does not set specific decontamination methods that must be utilized or when they must be utilized. Defendant, however, requires that decontamination and medical assistance occur as soon as possible after it is determined to be safe for the parties involved in the use of force incident. Decontamination for OC spray begins with removing the individual from the area where the spray was deployed. Fresh air is consistently deemed to be the best decontamination method, but water, eye drops, and other methods may be used, although not required.

{¶30} Upon review, Plaintiff did in fact receive appropriate decontamination and medical assistance. Plaintiff was immediately removed from the area where the OC spray was deployed and moved across a 100-yard open air courtyard, to the TPU segregation unit. Plaintiff was then seen in TPU by Nurse Smith who provided Plaintiff medical attention, including water for Plaintiff's subjective complaints of OC spray in his mouth. Plaintiff did not mention OC spray in his eyes at the initial medical evaluation. Although Plaintiff contends that he was placed into TPU-125 without any working water, the evidence establishes that even if the sink and toilet were not working, the shower would work independently of the sink and toilet because it uses a dedicated water line.

{¶31} Plaintiff then continued to receive ongoing decontamination and medical attention on September 28, September 29, and October 1, 2022, with a nurse providing medical care in some capacity at each visit. On September 28, 2022, Plaintiff first complained about irritation issues with his eyes and was provided ointment and eye wash/drops. On September 29, 2022, Plaintiff received a water rinse for his face and scalp. On October 1, 2022, Plaintiff was provided ointment and eye wash/drops. Ultimately, Plaintiff's allegations deal more with medical malpractice and the quality of medical care received, which is not a claim brought by Plaintiff in this case and, even if it was, is not provable given the evidence currently before the Magistrate.[4]

---

[4] To the extent that Plaintiff takes issue with the medical attention and decontamination provided, the Magistrate concludes that Plaintiff cannot prevail on a claim for medical malpractice. To prevail on a medical malpractice claim, "plaintiff must demonstrate by the preponderance of the evidence that the injury complained of was caused by a practice that a physician of ordinary skill, care or diligence, would not have employed, and that plaintiff's injury was the direct and proximate result of such practice." *Schmidt v. Univ. of Cincinnati Med. Ctr.*, 117 Ohio App.3d 427, 430 (10th Dist. 1997), citing *Bruni v. Tatsumi*, 46 Ohio St.2d 127 (1976), paragraph one of the syllabus. However, Plaintiff did not submit an affidavit of merit by a

{¶32} Accordingly, the Magistrate concludes that Defendant did not breach its duty to exercise ordinary care in decontaminating Plaintiff after a use of force incident involving OC spray.

**Conclusion**

{¶33} Based upon the foregoing, the Magistrate recommends judgment be entered in favor of Defendant.

{¶34} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

ADAM Z. MORRIS
Magistrate

**Filed August 8, 2025**
**Sent to S.C. Reporter 9/4/25**

---

medical professional or present any expert witness testimony regarding his medical treatment. It is well-settled that, in order to prove a claim for medical malpractice, "[e]xpert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard." *Reeves v. Healy*, 2011-Ohio-1487, ¶ 38 (10th Dist.), citing *Bruni* at 130-131. Accordingly, without expert testimony to establish the standard of care, Defendant's breach of that standard, and proximate cause of any injuries, Plaintiff's medical malpractice claim must fail. *See Hernandez v. Ohio Dept. of Rehab. & Corr.*, 2017-Ohio-8646, ¶ 13-14 (10th Dist.) (inmate required to produce an expert report addressing the standard of care, breach of that standard, and proximate cause of injuries to create a genuine issue of material fact); *Sanchez v. Ohio Dept. of Rehab. & Corr.*, 2019-Ohio-2534, ¶ 26-28 (10th Dist.) (inmate required to support his claim of medical malpractice with expert testimony).